# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **VitalGo Systems, Ltd.,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **VitalGo Inc.** | ) | CIVIL ACTION NO. 1:26-cv-1533 |
| Plaintiffs, | ) | |
| | ) | COMPLAINT FOR PATENT |
| v. | ) | INFRINGEMENT |
| | ) | |
| **Kreg Therapeutics, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

As its Complaint in this action, Plaintiffs VitalGo Systems, Ltd. and VitalGo Inc., (collectively "VitalGo"), by their undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE CASE

1.      This is an action for infringement arising under the patent laws of the United States, Title 35, United States Code, of U.S. Patent No. 8,566,984 ("the '984 patent"), owned by VitalGo. *See* Ex. A. As set forth below, Defendant Kreg Therapeutics, LLC ("Kreg") infringed the '984 patent by making, using, selling, and offering to sell the products and services covered by at least one claim of the '984 patent.

## INTRODUCTION

2.      VitalGo, founded in 2005, develops, commercializes, and sells innovative medical devices, specializing in advanced patient-handling and early-mobility technologies for hospitals

and rehabilitation settings. From its inception, VitalGo has focused on improving patient mobility, caregiver safety, and critical care outcomes, earning a reputation for engineering excellence in safe patient-handling solutions. Today, VitalGo is recognized as a pioneer in verticalization therapy, the practice of safely raising immobile patients from a supine to a standing position, and has positioned itself as a leading innovator in the hospital equipment industry.

3.      VitalGo prides itself in its commitment to advancing patient care. VitalGo invests heavily in research and development, working closely with clinicians and engineers to develop technologies that improve patient mobility and caregiver safety. Every VitalGo product is built to the highest standards of safety, functionality, and reliability, reflecting VitalGo's emphasis on precision engineering and clinical validation. This rigorous approach has made VitalGo a trusted name in healthcare technology and underscores its mission to make early mobility and verticalization therapy a standard of care in critical care medicine.

4.      VitalGo's product offerings focus on assistive and lift technologies that enhance patient mobility and nursing care. The Total Lift Bed™ is VitalGo's flagship invention and the first hospital bed of its kind: an ICU-grade bed capable of bringing a patient from a fully flat, supine position to a near-standing upright position at the push of a button. This patented, state-of-the-art system enables verticalization therapy for high-acuity patients, allowing early weight-bearing and upright positioning within the safety of a bed frame. One of the many features of the Total Lift Bed includes a patented motorized footboard, or foot lifter, that supports the patient's feet during elevation. By facilitating early mobilization and upright posture even for critically ill or mobility-impaired patients, the Total Lift Bed accelerates rehabilitation and improves patient outcomes while reducing the risk of injury to caregivers. VitalGo has continually refined the Total Lift Bed

2

through successive models and specialized versions, ensuring its advanced technology addresses a broad spectrum of patient needs and clinical scenarios.

5. VitalGo's trailblazing technologies have achieved widespread industry recognition. The Total Lift Bed itself is lauded as the world's first hospital bed capable of safely raising a patient from lying in a hospital bed to a fully upright, standing position. VitalGo's early-mobility innovations have been embraced by healthcare leaders worldwide, and the Total Lift Bed is now regarded as the ICU bed of choice at many of the world's leading hospitals. Through decades of unwavering commitment to innovation, VitalGo has established itself as a driving force in the medical device industry, continually advancing patient mobility and setting new standards for patient and caregiver safety in modern healthcare.

6. As an innovator, VitalGo has secured numerous patents in the United States and abroad for aspects of the Total Lift Bed including U.S. Patent No. 8,566,984 ("the '984 patent").

7. Defendant Kreg, VitalGo's former distributor, copied and adopted the patented features of VitalGo's Total Lift Bed and repackaged them in Kreg's competing product, known as the Catalyst Bed. Having profited from its relationship with VitalGo and access to VitalGo's protected intellectual property, Kreg capitalized on VitalGo's innovations through the Catalyst Bed and engaged in willful infringement of VitalGo's patent rights. By this action, VitalGo seeks redress from Kreg's unlawful patent infringement under 35 U.S.C. § 101 *et seq.*

## THE PARTIES

8. VitalGo Systems, Ltd is a corporation organized and existing under the laws of Cyprus, having a principal place of business at 7 Florinis St., 1065 Nicosia, Cyprus.

9. VitalGo Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 3315 Commerce Pkwy, Miramar, FL 33025.

10.     On information and belief, Kreg is a corporation organized under the laws of the State of Illinois with its principal place of business at 1940 Janice Ave, Melrose Park, Illinois 60160.

## JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, Title 35 U.S.C. §§ 1 *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), 2201, and 2202.

12.     On information and belief, Kreg has regularly and purposefully availed itself of the privilege of conducting business activities within Virginia and this District. On information and belief, this Court has personal jurisdiction over Kreg because Kreg has established minimum contacts with the forum and with the Alexandria Division such that the exercise of personal jurisdiction over Kreg will not offend traditional notions of fair play and substantial justice. On information and belief, Kreg delivers, and deploys its accused Catalyst beds in hospitals in the Northern Virginia health systems and has marketed, demonstrated, and introduced the accused Catalyst bed into clinical use environments within the Alexandria Division, including at Inova Health System facilities in Fairfax, VA.

13.     Kreg Therapeutics LLC is registered as a foreign limited liability company in Virginia and has a designated agent for service, CT Corporation, located at 4701 Cox Road, Suite 285, Glen Allen, Virginia. On information and belief, Kreg has purposefully availed itself of the rights and benefits of Virginia law and has engaged in systematic and continuous contacts with Virginia. On information and belief, Kreg derived substantial revenue from the sale of infringing products and/or services in Virginia and has availed itself of the privilege of conducting business within Virginia.

14.    On information and belief, Kreg regularly and systematically transacts and has transacted business in this District, directly or through intermediaries or agents, and has committed acts of infringement in this District. On information and belief, Kreg, directly or through intermediaries or agents, has also placed infringing products, including the Catalyst Bed, into the stream of commerce by offering those products for sale into this District.

15.    On information and belief, personal jurisdiction is proper because Kreg has committed acts of infringement in this District. This Court has personal jurisdiction over Kreg because, *inter alia*, this action arises from activities Kreg directed towards Virginia.

16.    Exercising personal jurisdiction over Kreg in this District would not be unreasonable given Kreg's contacts in this District, the interest of this District in resolving disputes related to products and/or services sold herein, and the harm that Kreg's infringement caused to VitalGo.

17.    For these reasons and for other reasons that will be presented to the Court if jurisdiction is challenged, the Court has personal jurisdiction over Kreg.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Kreg has committed acts of infringement in this District and maintains a regular and established place of business in this District.

19.    On information and belief, Kreg maintains and operates a physical distribution and service center located in this District at 5381 Glen Alden Drive, Henrico, Virginia 23231, which lies within the Eastern District of Virginia. Kreg accommodates logistical operations including a fleet of "Kreg Therapeutics"-branded commercial delivery trucks at this physical location. This facility is a physical, geographic location in the District from which Kreg conducts

business on a regular and ongoing basis.  Indeed, the Kreg Therapeutic's delivery trucks bear State of Virginia license plates and display the notation on their side walls, "Local Service 24 hrs".

20.     Kreg's Henrico, Virginia facility includes two loading docks, each accompanied by a standard entry door marked with the "Kreg Therapeutics" name and logo, and bearing signage stating, "Employees Only." The facility also includes a front office, the street-facing window of which displays the Kreg Therapeutics name and logo.

21.     On information and belief, in addition to employing commercial drivers and service technicians, at its Henrico, Virginia facility, Kreg also employs business professionals in this District including its Operations Supervisor. On information and belief, Kreg has recruited a Field Service Representative to work on-site in its Virginia facility in this District.

22.     Accordingly, venue is proper in this District under 28 U.S.C. § 1400(b), and personal jurisdiction over Kreg is likewise proper because Kreg has purposefully directed its activities at this District and has availed itself of the privilege of conducting business herein.

**VITALGO'S INNOVATIVE BUSINESS AND INTELLECTUAL PROPERTY**

23.     Shortly after its founding, VitalGo's engineers conceived the concept of what would become the Total Lift Bed, the world's first hospital bed capable of raising a patient from fully lying flat to a nearly standing position. VitalGo documented its vertical bed concept in a patent filing in 2005 and spent the next several years continuing its research and development efforts. By 2008, VitalGo had built working prototypes of the Total Lift Bed after which it demonstrated a prototype at medical industry events to prove the feasibility of "bed-based" verticalization therapy.



24.     In 2009, following extensive engineering and clinical testing, VitalGo commercially introduced the first-generation Total Lift Bed (model "TLB-304"), making it available to hospitals and long-term care facilities. This launch marked a critical breakthrough in patient care technology, as VitalGo's Total Lift Bed was the first hospital bed of its kind to offer safe, controlled vertical lifting of a patient within a bed frame.

25.     The Total Lift Bed introduced a transformative solution to the problem of early patient mobilization. It is an ICU-grade motorized bed that can transition a patient from a fully supine (flat) position to a near-standing position at the push of a button. The bed's tilting mechanism lifts the entire patient support surface (mattress and frame) upward from horizontal to vertical, thereby enabling caregivers to mobilize even critically ill patients into an upright posture without manual lifting.



26.　　A movable footboard (marketed by VitalGo as the "Foot Lifter™") is integrated at the foot end of the bed to support the patient's feet during this movement. The Foot Lifter™ provides firm support to prevent sliding as the bed tilts upward.



27.　　The footboard ensures the patient remains safely in position and gradually assumes weight on their legs as the bed elevates, allowing early weight-bearing exercise under fully supported conditions. The Total Lift Bed's design thereby mitigates the risk of patient instability or falls during verticalization, and it spares hospital staff from dangerous manual lifting

tasks. By enabling safe, controlled upright positioning within the bed, VitalGo's Total Lift Bed significantly improves rehabilitation outcomes and reduces caregiver injuries.

28. VitalGo has continually refined and enhanced the Total Lift Bed through successive versions to expand its clinical applications and improve its performance. Around 2011, VitalGo introduced the first weight-bearing measurement system integrated into a hospital bed. This Weight Bearing Control system became a breakthrough in progressive mobility therapy.

29. In 2011, VitalGo unveiled a bariatric model of the Total Lift Bed, engineered to safely accommodate patients up to 1,000 pounds. This bariatric version introduced additional features such as a front egress design (a foot section that could open fully 90° degrees, forming a stable platform at floor level) to facilitate heavy patients stepping directly out of the bed when upright. By 2012, VitalGo launched the TLB-425 model, which offered enhanced electronic controls and a weight capacity of 425lb. In 2014, VitalGo released the TLB-425T model, an advanced iteration designed for intensive-care use, and in 2023, VitalGo introduced the TLB-V5 that included a hospital-grade ICU upgrade, adding integrated monitoring, safety, and ICU-standard features.

30. From the very beginning, VitalGo recognized the importance of securing patent protection for its revolutionary bed technology. VitalGo's patent development efforts began in 2005, with multiple initial U.S. provisional and nonprovisional patent applications filed that year covering various aspects of the verticalization bed concept. In May 2006, VitalGo filed an international patent application, PCT/IL2006/000575, to pursue global patent rights for its invention, followed by additional U.S. and foreign patent filings in subsequent years. These efforts have produced an extensive patent portfolio directed to many VitalGo innovations, including verticalization mechanisms, anti-sliding systems, foot-engagement structures, and safety features,

9

and have ensured that VitalGo's key technology is broadly protected against imitators. For example, by 2012 VitalGo had obtained multiple U.S. patents related to the Total Lift Bed's innovative design, including U.S. Patent Nos. 8,117,695, and 8,104,123, and 8,566,984 which cover various inventive aspects of VitalGo's verticalizing bed and footboard systems.

31.    VitalGo marked its patented Total Lift Bed with its issued U.S. patent numbers in compliance with the provisions of 35 U.S.C. § 287(a), providing notice of its patent rights to the industry and competitors. VitalGo's notice included the asserted patent in this action, U.S. Patent 8,566,984, among other patents. VitalGo has marked its Total Lift Beds since well before March 23, 2020 as shown, for example, on the example below of manufacturer's identification plate affixed to the Total Lift Bed (indicating the exemplary year range of 2019-2021) and as recorded in the Total Lift Bed Assembling, Operating and Maintenance Manual:[1]



---

[1] Ex. B, Total Lift Bed Assembly Operating and Maintenance Manual, dated March 23, 2020, at 20.

**KREG'S HISTORY OF COPYING VITALGO'S INNOVATIONS AND USE OF VITALGO'S INTELLECTUAL PROEPERTY**

32.     VitalGo had already established a meaningful commercial and promotional presence in the United States before Kreg ever became involved with the Total Lift Bed. In or about 2009, VitalGo established operations to market and support the Total Lift Bed in the United States and publicly introduced the technology to the U.S. market. As part of that effort, VitalGo demonstrated the Total Lift Bed model HS304 at a Las Vegas trade show attended by prospective distributors and others in the medical equipment industry. That demonstration was a public showing of VitalGo's working technology to multiple market participants, undertaken to build a nationwide distribution network for a product and platform VitalGo had already conceived, developed, and brought to the point of commercial readiness. Through that U.S. launch and trade-show demonstration, VitalGo placed the market on notice that the Total Lift Bed, and the innovations embodied in it, originated with VitalGo.

33.     By 2009, VitalGo had moved beyond product development and demonstration and had begun commercializing the Total Lift Bed through multiple distributors in the United States. VitalGo engaged several distributors in different territories to expand sales, service, and market adoption of the Total Lift Bed throughout the country.

34.     On or about December 2009, VitalGo engaged Kreg[2] as a distributor of Total Lift Beds, giving Kreg direct access to VitalGo's product, marketing materials, training, and proprietary know-how. VitalGo later learned that Kreg began copying VitalGo's work soon after their business relationship started, including by copying VitalGo's marketing materials. For example, shown below on the left is the original cover page of VitalGo's brochure for its Total Lift Bed (TLB).  On

---

[2] At the time, VitalGo engaged Kreg Therapeutics, Inc. Kreg Therapeutics Inc. has since converted into defendant, Kreg Therapeutics, LLC.

the right is Kreg's copy of the cover page, substituting its name for VitalGo. Kreg copied VitalGo's

entire brochure, replacing VitalGo's name with its own, suggesting that Kreg was the inventor of

the Total Lift Bed[3], and falsely representing that it owned the patents for the Total Lift Bed.

 

35.     Kreg knew of VitalGo's valuable intellectual property and sought ways to acquire

it. In 2010, Craig Polus, founder of Kreg, demanded VitalGo give him intellectual property rights

to VitalGo's pending patents in exchange for buying more beds from VitalGo. Norris Hansen, a

former employee of VitalGo and by then employed by Kreg, renewed this demand for intellectual

property rights on two occasions in or about 2010. VitalGo did not agree to grant any intellectual

property rights to Craig Polus or Kreg.

36.     Kreg's role as a VitalGo distributor ended in May of 2011. Once Kreg's role as

distributor ended, its copying intensified. After several years of access to VitalGo's beds, brochures,

product positioning, and technology, Kreg filed a series of patent applications that describe

VitalGo's innovations and incorporated VitalGo's patented technology into Kreg's own bed

products.

37.     On April 18, 2014, years after VitalGo's patents were filed and years after

VitalGo's Total Lift Bed was on the market, Kreg filed Provisional Application No. 61/981,591,

---

[3] Compare Ex. C with Ex. D.

which later matured into U.S. Patent No. 10,179,077 ("the '077 patent") and served as the foundation for additional Kreg filings. The '077 patent includes the adjustable footrest features of the Total Lift Bed device. *See* Ex. E ('077 patent at abstract, claim 1). Kreg's patent filings were made only after Kreg had obtained extensive access to VitalGo's products and technology through the parties' distribution relationship and after Kreg had already tried to obtain rights in VitalGo's pending patents directly from VitalGo.

38.     Kreg subsequently launched its own bed known as the Catalyst Bed in or about 2016. On information and belief, the Catalyst Bed appropriates core features long embodied in VitalGo's Total Lift Bed and protected by VitalGo's patent portfolio, including a moveable foot support for enabling a patient to be moved from a resting position toward a vertical position[4]:




39.     Kreg's own materials for the Catalyst promote "Verticalization Therapy™" and tout progressive upright positioning and weight-bearing therapy.[5] This is precisely the field VitalGo had pioneered and commercialized years earlier through the Total Lift Bed.

---

[4] *See* Exs. F, Kreg's Catalyst Critical Recovery Bed Brochure, and G, Kreg's Verticalization Therapy Brochure.
[5] See Ex. G Kreg's Verticalization Dion Therapy Brochure

40.    Kreg had direct, long-running access to VitalGo's patented technology as VitalGo's distributor; demanded rights in VitalGo's pending patents; copied VitalGo's brochure and presented VitalGo's bed as its own; then later filed patent applications improperly claiming VitalGo's core innovations as its own and which it incorporated into a competing bed.. Kreg's intrusion of VitalGo's intellectual property was not accidental, innocent, or the product of independent development. It was deliberate, knowing, and undertaken in conscious disregard of VitalGo's patent rights.

41.    Over the years, Kreg has made, used, sold, offered for sale and/or imported the Catalyst Bed throughout the United States, including the Accused Products set forth below.

### KREG PRODUCTS INFRINGE THE '984 PATENT

42.    The Accused Products include any and all versions of the Catalyst Bed made, used, offered for sale, sold, or imported into the United States by Kreg that infringes the '984 patent. This includes at least the Catalyst Critical Recovery Bed depicted below[6]:



---

[6] Ex. F at 2.

43.     Kreg's public marketing materials confirm the Catalyst bed contains a tiltable frame tiltably mounted on a base and causes headward movement of the foot support, thereby engaging the bottom surface of the user's feet, when the tiltable frame assembly is in said resting position, as shown in Kreg's Verticalization Therapy Operations Instructions:[7]




44.     Kreg publishes detailed operating instructions on how to operate and manipulate the Catalyst Bed in its Verticalization Therapy Operating Instructions manual.[8]

### COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 8,566,984

45.     VitalGo repeats and realleges the foreground paragraphs as if fully set forth herein.

46.     On October 29, 2013, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '984 patent, titled "Multi-Position Support Apparatus Featuring a Movable Foot Support."

47.     The '984 patent is valid and enforceable.

48.     The '984 discloses a highly innovative multi-position support apparatus that addresses long-standing deficiencies in conventional hospital beds, particularly with respect to patient safety, mobility, and independence. At its core, the invention integrates mechanical positioning features with intelligent control logic to provide a coordinated and responsive system

---

[7] Ex. G.
[8] *See* Ex. G.

that materially improves patient handling compared to prior art devices, particularly for sick or elderly patients.

49.    A principal innovation of the '984 patent lies in the inclusion of both a tiltable patient support and a movable foot support that maintains a patient's stability during tilting. The specification explains that the invention is directed to "multi-position support apparatus for supporting a user in a manner facilitating the exiting of the user from the apparatus," thereby expressly targeting a problem not adequately addressed in earlier systems. '984 patent at 1:23-51. Traditional beds allow positional adjustment but fail to address the risk of user sliding or instability when transitioning between lying and standing. *Id.* at 1:40-45. In contrast, the invention of the '984 patent enables the user's body to remain properly supported during positional changes utilizing the foot support to facilitate position maintenance and exiting from the bed. *Id.* at 1:40-51.

50.    One of the myriad technical advancements described in the specification of the '984 patent resides in the processor-controlled actuation of the movable foot support. As described in the specification, the apparatus includes "a processor programmed to cause the foot support to be in a feet-engaging position, engaging the bottom surface of the user's feet, when the tiltable frame assembly is in the resting position, and to maintain the feet-engaging position while the tiltable frame assembly is moving towards a vertical position." '984 patent at 1:55-64. By maintaining engagement with the user's feet as the apparatus tilts, the invention "thereby prevent[s] sliding of the user's body when the tiltable frame assembly is tilted." *Id.* As the patent specification explains, "[T]he foot support also "facilitate[s] exiting from the apparatus" by the patient. '984 patent at 4:11-15.

51.    Importantly, the invention is expressly designed to address real-world patient limitations, such as reduced mobility or those with difficulty standing. The specification explains

that the claimed apparatus "receives and lowers the user from a standing position . . . into a reclining or horizontal position . . . [and] raises the user from lying down to standing up," thereby eliminating the need for manual assistance or physically demanding movements by the user. '984 patent at 3:45-51. This capability represents a meaningful advancement over conventional beds, which typically lack the functionality to safely transition users into fully upright, supported positions.

52.     The '984 patented innovation improves the transition from seating to standing positions and can prevent dizziness in hospital patients, or assist elderly patients with orthostatic hypotension, weakness, muscle tonus decrease, or susceptibility to fainting.

53.     In sum, the '984 patent describes a technologically sophisticated and integrated system that combines a tiltable bed with an adjustable footrest to support a patient while the bed is tilting thereby achieving a level of functionality not present in conventional hospital beds. The movable foot support with the tiltable frame and body support provides a novel and effective solution to the problem of patient instability during positional transitions.

54.     VitalGo holds all rights, title, and interest in and to the '984 patent, including the right to bring this suit and recover all past damages for infringement of the '984 patent during its term. Kreg is not licensed under the '984 patent, either expressly or implicitly, nor does it enjoy or benefit from any other rights in or to the '984 patent whatsoever. As such, Kreg's infringement described below has injured VitalGo.

55.     Kreg, in violation of 35 U.S.C. § 271, has directly and indirectly infringed, either literally and/or under the doctrine of equivalents, at least claim 1 of the '984 patent by, among other things, making, using, offering to sell, selling, and/or importing into the United States without authority products, equipment, software, and/or services, including without limitation the

Accused Products, including the Catalyst Bed, that practice at least claim 1 of the '984 patent, and by inducing and/or contributing to the infringing acts of others, including third parties that manufacture and/or assemble such products on Kreg's behalf with Kreg's knowledge, direction, and/or control.  A claim chart setting forth certain nonlimiting examples of Kreg's infringement accompanies this Complaint as Ex. H, herein incorporated by reference. Kreg indirectly infringed at least claim 1 of the '984 patent by knowingly encouraging customers to use the Accused Products in the directly infringing manner described in Exhibit H directly or through intermediaries. For example, Kreg created, published and/or provided sales, promotional, and marketing materials along with supporting materials, product manuals, user guides, and/or technical support and other information relating to the Accused Products and functionality thereof. *See* Exs. F and G. Kreg has also contributed to the infringement of at least claim 1 of the '984 patent through Kreg's sale and provision of the Accused Products to customers in the United States for use in practicing at least claim 1 of the '984 patent. The Accused Products, including functions described in Kreg's Verticalization Therapy publication in Exhibit G, constitute at least a material part of the invention of the '984 patent, are known by Kreg to be especially made or adapted for use in infringing the '984 patent when used for their normal and intended purpose, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

56.    Kreg had actual knowledge of the '984 patent at least as of March 25, 2014, when it submitted the '984 patent in an information disclosure statement to the United States Patent Office when prosecuting its patent application 13/050,637.[9]

---

[9] Ex. I – March 25, 2014 Information Disclosure Statement submitted in prosecution of U.S. Patent Application 13/050,637 on behalf of Applicant Craig Poulos

57.      Additionally or alternatively, Kreg had actual or constructive knowledge, or was willfully blind to, the existence of VitalGo's patent rights in accordance with the allegations of ¶¶ 32-40 and 56; knew or should have known that the advertisement, offer for sale, sale, importation, and/or the facilitation of sales of the Accused Products would infringe at least claim 1 of the '984 patent; and/or remained willfully blind to the infringement.

58.      Despite this knowledge, Kreg deliberately continued its infringing activities using its prior access to VitalGo's patented technology as VitalGo's distributor and despite actual knowledge of the patent and understanding that its activities constituted infringement of a valid patent, or this risk was either known or obvious such that it should have been known to Kreg. *See* supra, ¶¶ 32-40, 43-44, and 56. Thus, Kreg's infringement has been willful and deliberate.

59.      VitalGo is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Kreg's infringement. Kreg's infringement accused herein is willful and deliberate, as Kreg became aware of the infringing nature of the Accused Products at least by virtue of the allegations of ¶¶ 32-40 and 56. Despite having actual knowledge of the '984 patent, Kreg continued its infringing activities.

60.      VitalGo has been damaged and irreparably harmed by Kreg's infringement of the '984 patent.

61.      Kreg's conduct in infringing the '984 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## JURY DEMAND

62.      Pursuant to Fed. R. Civ. P. 38, VitalGo respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, VitalGo requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

63.     A declaration that Kreg has infringed one or more claims of the '984 patent, either literally or under the doctrine of equivalents;

64.     An Order requiring Kreg to pay VitalGo damages pursuant to 35 U.S.C. §§ 284, 285, 286, and 287 in an amount as yet undetermined caused by the foregoing acts (together with prejudgment and post-judgment interest), but no less than a reasonable royalty;

65.     A declaration that Kreg's infringement has been willful since at least as early as March 25, 2014, and enhancing damages in accordance with 35 U.S.C. § 284;

66.     An award of costs and expenses pursuant to 35 U.S.C.§ 284 or as otherwise permitted by law;

67.     A finding that this is an exceptional case under and an award of attorneys' fees pursuant to 35 U.S.C. § 285; and

68.     Such other and further relief, whether legal, equitable, or otherwise, the Court may deem just and appropriate.

20

Dated: June 3, 2026

Respectfully submitted,

*/s/ Michael V. Young*
Gerson Panitch
John Williamson
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:    (202) 408-4080
Facsimile:     (202) 408-4400

Jacob Schroeder
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304-1203
Telephone: (650) 849-6600
Fax: (650) 849-6666

Michael V. Young (VA Bar No. 79,246)
Daniel Jordan
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190-602
Telephone: 571 203 2700
Fax: (571) 203-2777

Attorneys for Plaintiffs VitalGo Systems, Ltd and VitalGo Inc.

21